UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS W. SMITH; MBNA AMERICA BANK N.A.; STATE OF CALIFORNIA FRANCHISE TAX BOARD; DAVID K. JACOBS AS TRUSTEE OF THE T & E A TRUST DATED OCTOBER 1, 1993;<br><br>    Defendants. | 1:10-cv-01193 OWW JLT<br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(DOC. 21) |

## I.    INTRODUCTION

Plaintiff the United States of America ("United States") proceeds with this action to reduce federal tax assessments to judgment and foreclose federal tax liens on real property.

Before the court is the United States' motion for summary judgment. Doc. 21. No Defendant filed an opposition. The motion was heard July 18, 2011.

## II.    FACTUAL BACKGROUND[1]

### A.    The Taxpayer

Thomas Wayne Smith worked for over 44 years as a service, repair and installation technician in the heating and cooling industry. Doc. 22, ¶ 1. Mr. Smith worked part-time for a company he formerly owned, "Bell-Aire Heating and Cooling" ("BAHC"). *Id.*

---
[1] Facts are undisputed unless where indicated.

### B. The Subject Property

The real property subject to this action is located at 5251 West Decatur Avenue, Fresno, California, 93722, in the County of Fresno, State of California ("Property"). The Property is more particularly described as:

> Lot 94 of Tract No. 4768, McCaffrey Community No. 7, in the City of Fresno, County of Fresno, State of California, according to the map thereof recorded in Book 60, Pages 45, 46, & 47 of Plats, Fresno County Records.
>
> APN: 502-283-31

Doc. 22-2.

Mr. Smith purchased the Property on or about October 30, 1998. A Grant Deed transferring all right, title, and interest in the Property to Mr. Smith was recorded with the Fresno County Recorder. May 4, 2011 Deposition of Thomas W. Smith ("Smith Depo."), 7; Doc. 22-2. Mr. Smith occupied the property as his primary residence.

On October 3, 2002, a Trust Grant Deed was recorded with the Fresno County Recorder which transferred title of the Property from Mr. Smith to "TWC. Trustee: David-Keith: Jacobs." Doc. 22-3.[2] Mr. Smith continued to occupy and control the Property after its transfer to the TWC Trust. Smith Depo. 129.

On or about June 16, 2008, a Grant Deed was recorded with the Fresno County Recorder which transferred title of the Property from the Trustee of the TWC Property Trust to "David

---

[2] The United States asserts, without evidentiary support, that the purported transfer from Mr. Smith to the TWC Trust was for no consideration.

2

Keith Jacobs, Trustee of the T & E A Trust," dated October 1, 1993. Doc. 22-4. Mr. Smith continued to occupy and control the Property after the transfer to the T & E A Trust. Smith Depo. 126, 129.

   C.   **Tax Liabilities**

Revenue Officer Dennis Stiffler was assigned to secure unfiled tax returns and seek payment of Mr. Smith's unpaid tax liabilities. Doc. 21-4, ¶ 2. Revenue Officer Stiffler calculated Mr. Smith's current balance, with accruals of interest and penalties to June 16, 2011, for individual federal income tax for the tax years ending December 31, 1996, through and including 2003, as $318,752.47. Doc. 21-4, ¶ 5.

For the tax year ending December 31, 1996, the original assessment was the result of an Internal Revenue Service examination of a filed tax return. *Id.* at ¶ 3. In resolving the tax liabilities for 1996, Mr. Smith signed a Closing Agreement which included, among others, the following terms: "the T & E A Equipment Trust will be disregarded for the 1996 taxable year" and "the T & E A Equipment Trust [is] the alter ego of the taxpayer and the assets ostensibly held in the names of the trusts are the assets of the taxpayer." Doc. 22-5. Mr. Smith's remaining tax liabilities are also based on Mr. Smith's late filed tax returns, which the Internal Revenue Service accepted. Doc. 21-4, ¶ 4.

D.   <u>The Trusts</u>

Mr. Smith became acquainted with David K. Jacobs in 1981 or 1982 when they worked on a new church together. Doc. 22, ¶ 2. Some years later, Mr. Jacobs sold Mr. Smith insurance. *Id*. at ¶ 3.

Mr. Jacobs persuaded Mr. Smith to use trusts, which he said would reduce Mr. Smith's income tax liabilities. *Id.* at ¶ 4. Mr. Jacobs invited Mr. Smith and his wife to attend a conference on trusts at which Ronald Chappell, CPA, spoke. Mr. Chappell appeared to be Mr. Jacobs' teacher on trusts. *Id.* at ¶ 5.

On or about October 1993, Mr. Smith permitted Mr. Jacobs and his sponsors to create several trusts for Mr. Smith, including the "Comfort Heating Trust," the "T & A A Family Holding Trust," and the "T & E A Equipment Trust." Docs. 22, 22-5. Mr. Jacobs also created the "Bell Air Trust," to which Mr. Smith assigned all income and expenses of Mr. Smith's heating and air conditioning business, BAHC.

The business activities did not change after the transfer of BAHC into trust. Mr. Smith named himself as "manager" of each trust. Mr. Smith was still the boss, and controlled what the business did and did not do, day-to-day operations, collection of income, payment of expenses of the business, bidding, and hiring. Doc. 22, ¶ 8.

Mr. Smith, his wife, his son, and Mr. Jacobs had authority

4

to sign on the Bell Air Trust account. Smith Depo., 47-48. Mr. Smith removed Mr. Jacobs from signing authority over several trust checking accounts after he misused the accounts. Smith Depo., 49. Mr. Jacobs advised Mr. Smith to pay from the Bell Aire Trust, and later out of the TWC Trust checking account, all mortgage payments, taxes, insurance and other upkeep expenses for the Property and the expenses of BAHC. *Id.* at ¶ 10.

Mr. Smith transferred the property where BAHC was located (the 240 North "H" Street shop) ("BAHC Property") to the TWC Trust, and later to the T & E Trust. Doc. 22, ¶ 9. In 2008, Mr. Jacobs as trustee of the T & E Trust sold the BAHC Property and used the proceeds to pay off the mortgage on the Property. *Id.* This transaction involved approximately $100,000. Smith Depo., 60.

Mr. Jacobs advised Mr. Smith to transfer the Property into the TWC Trust. On June 16, 2008, Mr. Jacobs as trustee transferred title of the Property to the T & E A Trust. Doc. 22, ¶ 10; Doc. 22-4. Mr. Smith retained control of the Property after the transfer and to the present. Mr. Smith controlled the TWC Property Trust account, and used checks from the TWC Property Trust account to pay the Property's property tax, water, and garbage bills. Smith Depo., 136-138; Doc. 22-6; Doc. 22-7.

Mr. Jacobs told Mr. Smith that the trusts were "non-reporting trusts." Mr. Jacobs also told Mr. Smith that the trusts

5

and Mr. Smith did not have to file tax returns. Doc. 22, ¶ 12. Mr. Smith stopped filing tax returns entirely. Smith Depo., 93.

After Mr. Smith began receiving letters from the Internal Revenue Service, he signed an "Affidavit of Probable Cause for a Criminal Complaint" against Revenue Officer Dennis Stiffler, at the instigation of Mr. Jacobs. Doc. 22-1.

Mr. Smith now believes that almost everything Mr. Jacobs told him was false. Doc. 22, ¶ 14. Mr. Smith agreed that the trusts were "baloney." Smith Depo., 133; Doc. 22-5.

### III. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or

6

"unnecessary" factual disputes are not considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

If the moving party would bear the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.*

If the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the moving party does not meet its burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

7

his favor." *Id.* Only admissible evidence is considered in deciding a motion for summary judgment. *Soremekun*, 509 F.3d at 984. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

## IV. DISCUSSION

### A. Tax Liabilities

The United States moves for summary judgment on Mr. Smith's tax liabilities.

#### 1. Trusts

The United States contends that Mr. Smith attempted to use trusts to reduce his tax liabilities, and there is no question that the trust scheme was illegitimate. The United States contends that they obtained an injunction shutting down the sale of the trust scheme, and prosecuted the Certified Public Accountant who promoted the scheme to Mr. Smith. *See United States v. Estate Pres. Servs., Inc.*, 202 F.3d 1093 (9th Cir. 2000) ; *see also United States v. Chappell, et al.*, 2:97-cr-216-WBS-DAD (E.D. Cal. 1999) (conviction of CPA who promoted scheme to Mr. Smith for tax evasion scheme involving use of trusts). The Court of Appeals found the tax shelter to be "plainly illegitimate." *Estate Pres. Servs., Inc.*, 202 F.3d at 1106.

A trust without economic substance is a sham and is not recognized for federal tax law purposes. *Sparkman v. Comm'r*, 509

8

F.3d 1149, 1154-1155 (9th Cir. 2007) ("It has long been the law that a transaction with no economic effects, in which the underlying documents are a device to conceal its true purpose, does not control the incidence of taxes."); *see also Zmuda v. Comm'r*, 731 F.2d 1417, 1421 (9th Cir. 1984) (holding that the trusts at issue were "shams" and thus disregarded for federal tax purposes); *Hanson v. Commiss'r*, 696 F.2d 1232, 1234-35 (9th Cir. 1983) (disregarding a trust that had no economic substance). In evaluating whether a trust has economic substance, the court employs a four-factor test:

> (1) whether the taxpayer's relationship to the transferred property differed materially before and after the trust's creation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other trust beneficiaries; and (4) whether the taxpayer respected the restrictions placed on the trust's operation as set forth in the trust documents.

*Sparkman*, 509 F.3d at 1155.

There is no issue that Mr. Smith's trusts lacked economic substance. Mr. Smith's relationship to his transferred property did not differ before and after they were transferred to the trusts. Mr. Smith continued living in the Property after its transfer without paying rent and paid all Property expenses. Although Mr. Jacobs was named as an independent trustee, Mr. Smith removed Mr. Jacobs from signing authority over trust accounts after Mr. Jacobs misused the accounts. Mr. Smith was named "manager" of the trusts and controlled their day-to-day

9

operations. There is no evidence that an economic interest passed to other trust beneficiaries. In resolving the tax liabilities for 1996, Mr. Smith signed a Closing Agreement which included, among others, the following terms: "the T & E A Equipment Trust will be disregarded for the 1996 taxable year;" and "the T & E A Equipment Trust [is] the alter ego of the taxpayer and the assets ostensibly held in the names of the trusts are the assets of the taxpayer." Doc. 22-5. Mr. Smith admitted that the trusts were "baloney." Smith Depo., 133.

Mr. Smith's sham trusts lacked economic substance and are not recognized for federal tax law purposes.

### 2. Tax Liability

In an action to collect tax, the United States bears the burden of proof. *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1982).

> The government can usually carry its initial burden, however, merely by introducing its assessment of tax due. Normally, a presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case.

*Id*. The United States submitted Certificates of Assessments and Payments for the tax years at issue. Doc. 23. Revenue Officer Stiffler calculated Mr. Smith's current balance, with accruals of interest and penalties to June 16, 2011, for individual federal income tax for the tax years ending December 31, 1996, through and including 2003, as $318,752.47. Doc. 21-4, ¶ 5. Mr. Smith has

10

not presented any evidence to rebut the presumption of correctness or create an issue of fact regarding his tax liability.

The United States' motion to reduce the tax assessments to judgment against Mr. Smith in the amount of $318,752.47, plus statutory interest and other statutory additions from June 16, 2011, is GRANTED.

**B.   Default Judgment Against Non-Appearing Parties**

The United States also moves for entry of default judgment against: (1) Mr. Jacobs as trustee of the T & E A Trust and (2) MBNA America Bank N.A. ("MBNA"). Default judgment was entered against Mr. Jacobs and MBNA on July 6, 2011. Doc. 25. The United States' motion for default judgment against Mr. Jacobs and MBNA is DENIED as moot and unnecessary.

**C.   Foreclose Federal Tax Liens**

The United States moves pursuant to 26 U.S.C. § 7403 for an order of judicial sale of the Property to foreclose on Mr. Smith's federal tax liens.

Under 26 U.S.C. § 7403, a court "may decree a sale" of a delinquent taxpayer's property. 26 U.S.C. § 7403. A civil collection action under Section 7403 "is one method in a formidable arsenal of collection tools available to the government to collect taxes." *United States v. Gibson*, 817 F.2d 1406, 1407 (9th Cir. 1987). Section 7403 affords the court

"limited equitable discretion" "to take into account both the government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *Id*. (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)). Discretion is limited to the consideration of four factors when the independent interests of third parties are involved:

> (1) the extent to which the government's financial interests would be prejudiced if it were relegated to a forced sale of the taxpayer's partial interest, (2) whether the third party with a nonliable separate interest in the property has a legally recognized expectation that his or her separate property will not be subject to a forced sale by the taxpayer's creditors, (3) the likely prejudice to the third party, both in personal dislocation costs and practical under compensation, and (4) the relative character and value of the interests held in the property.

*Id.* at 1407 – 1408.

Here, there is no evidence that a third party has an interest in the Property. The Supreme Court has stated that there are "virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer . . .." *United States v. Rodgers*, 461 U.S. 677, 709 (1983). There are no grounds to exercise discretion under 26 U.S.C. § 7403.

The United States' motion for an order of judicial sale of the Property to foreclose on Mr. Smith's federal tax liens is GRANTED.

V. <u>CONCLUSION</u>

For the reasons stated:

1. The United States' motion for summary judgment is GRANTED in part and DENIED in part.

2. The United States shall submit a proposed form of order decreeing its tax liens foreclosed and ordering sale of the subject real Property, consistent with this memorandum decision, within five (5) days following electronic service of this memorandum decision.

SO ORDERED.

DATED: <u>July 18, 2011</u>

                                        <u>/s/ Oliver W. Wanger</u>
                                          Oliver W. Wanger
                                United States District Judge